# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON

**ARNOLDO A. GAMBOA,**

    **Movant,**

v.                                         Case No. 2:12-cv-01175
                                            Case No. 2:08-cr-00151-02

**UNITED STATES OF AMERICA,**

    **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is the movant's Motion to Vacate, Set Aside and Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 206, "Motion"). By Standing Order (ECF No. 209), this action was referred to the undersigned for submission of proposed findings and recommendation for disposition. The United States filed a Response (ECF No. 211), and the movant filed a Reply (ECF No. 212).

The movant, Arnoldo A. Gamboa ("Defendant"), is serving a sentence of life imprisonment without release upon his conviction by a jury of conspiring to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 and conspiring to launder monetary instruments, in violation of 18 U.S.C. § 1956(h). (Judgment in a Criminal Case entered October 15, 2009, ECF No. 176.) His direct appeal was unsuccessful. United States v. Gamboa, No. 09-4985, 415 Fed. App'x 456, 2011 WL 791479 (4th Cir. Mar. 8, 2011), cert. denied, 131 S. Ct. 2169 (Apr. 25, 2011).

The § 2255 Motion was filed with the Clerk on April 16, 2012. Accordingly, Defendant's Motion was timely filed.

Facts of the Case

The facts of the case, which are not in particular dispute, are taken from review of the trial transcript and the Presentence Investigation Report prepared by the Probation Department. One of Defendant's co-conspirators was Lorene Canterbury, whose brother and sister, Marvin and Gracie Spry, were co-leaders of a cocaine conspiracy based in Mingo County, West Virginia. When Marvin and Gracie Spry were convicted and sentenced to terms of imprisonment, Lorene Canterbury took over the drug business, using Defendant as her source of supply. Defendant supplied Lorene Canterbury and Roy Blankenship, Sr., among others, with cocaine; she transferred money to him in Chicago via Western Union and the United States Postal Service. Defendant used several aliases to conceal his identity. A conservative estimate of Defendant's relevant conduct was distribution of more than 68 kilos of cocaine. The evidence related to the money laundering charge indicated transfers of tens of thousands of dollars.

Grounds for Relief and Positions of the Parties

Defendant labels four grounds for relief in his Motion, but his "Attachment(s)" to the Motion (ECF No. 206, at 14-21) add other assignments of error, supported by exhibits (id., at 24-50). In Ground One, Defendant states his claim for relief as follows:

> Whether Arnoldo A. Gamboa, hereafter "Mr. Gamboa," obtain his right to due process, a fair trial, right to a fair and [im]partial jury, right to effective assistance of counsel, right to be prosecuted with "clean hands," "good faith," with integrity, ethically, and pursuant to Canon rules.

(Id., at 4.) His Attachment as to Ground One complains about jury selection (two jurors with knowledge of the facts, and absence of Latinos on the jury panel), testimony concerning search warrants, traffic stops, and use of aliases, and his attorneys' failure to

obtain a plea offer from the United States and to move to suppress evidence at a hearing. (Id., at 14-17.)

Ground Two states: "Whether sequestering witness at trial, and government's acts of 'unclean hands,' using tainted, conflicting, unauthorized use of individuals' testimonies, with additional issues of conflict of interest." (Id., at 5.) In the Attachment, Defendant claims that he was prejudiced by inconsistent testimony by witnesses, and notes the absence of wiretap and video surveillance evidence. (Id., at 18-19.) He further complains that one attorney represented three witnesses against him, with a resulting conflict of interest. (Id., at 19.)

Ground Three asks: "Did government conduct themselves with 'unclean hands' bringing forth charges 14 months after defendant was already in custody, not withstanding placing procedures within Federal Rules of Civil Procedures, Title II, Rule 3 and Rule 4(d)(4) into question . . .?" (Id., at 7.) The Attachment explains that Defendant was arrested on June 27, 2007 on a charge of illegal re-entry. (Id., at 20.)

Ground Four states: "Whether the Court abuse its discretion, varying outside of the guideline, without adequately explaining its variance on the record, whether Mr. Gamboa's counsel's perform ineffective by not providing a interpreter during P.S.I. notification, also ineffective for not moving to strike testimony on P.S.I. which violated in both Confrontation Clause and Conflict of Interest." (Id., at 8.) The Attachment also complains about the filing of a section 851 enhancement against Defendant. (Id., at 21.)

The Response filed by the United States divided Defendant's claims into three categories: (1) issues which were decided on direct appeal; (2) issues which were not raised before this court or on direct appeal; and (3) claims of ineffective assistance of counsel. The

undersigned adopts this organization.

## ANALYSIS

<u>Issues Decided on Direct Appeal</u>

The Brief of Appellant filed by Defendant's appellate counsel listed five issues:

Whether the Appellant was denied due process of law because a juror who should have been struck for cause was seated and deliberated on the verdict?[1]

Whether the Appellant was denied due process of law because the witnesses were not sequestered?

Whether trial counsel was prejudicially ineffective for failing to request sequestration of witnesses?

Whether there was insufficient evidence to convict the Appellant?[2]

Whether the Government failed to prove beyond a reasonable doubt the prior convictions necessary for a mandatory minimum life sentence?

<u>United States v. Gamboa</u>, 2010 WL 1140293. In addition, appellate counsel preserved his arguments that Defendant's life sentence violates the Eighth Amendment and that Defendant's prior counsel was ineffective. (<u>Id.</u>)

As to the first issue, the Fourth Circuit ruled that "the district court did not abuse its discretion in seating the juror over Gamboa's objection." <u>Id.</u>, 415 Fed. App'x. at 458. As to the second issue, the Fourth Circuit held that "Gamboa has failed to establish the prejudice resulting from the trial court's decision not to sequester witnesses, and our review of the record leads us to conclude that the district court did not abuse its discretion in failing to do so sua sponte. <u>Id.</u> The court declined to consider the third issue on direct review. <u>Id.</u> The court considered the evidence with respect to the cocaine conspiracy charge, the fourth

---

[1] The Brief makes clear that the juror at issue was Ms. Goble.

[2] The Brief of the Appellant was limited to the evidence on Count One, the cocaine conspiracy.

4

issue on direct appeal, and found it to be sufficient. Id., at 459. As to the fifth issue, the Fourth Circuit concluded that "the district court did not clearly err in finding that the Government proved Gamboa's three prior felony drug convictions beyond a reasonable doubt." Id.

It is well settled that unless an intervening change in the law justifies revisiting a prior judicial determination, the right to pursue collateral relief through a section 2255 motion is not an invitation to re-litigate issues already resolved. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976)(collateral attack cannot ordinarily be made on basis of issues litigated on direct appeal). As to the issues which Defendant raised before the Fourth Circuit on direct appeal, there has not been an intervening change in the law which justifies revisiting those rulings. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the following issues were decided on direct appeal and may not be raised again:

> Seating of Ms. Goble as a juror;
> District Court's failure to sequester witnesses;
> Sufficiency of evidence as to the cocaine conspiracy; and
> Sufficiency of evidence as to Defendant's prior drug convictions.

Issues Not Raised before the District Court or on Direct Appeal and Thereby Defaulted

The Supreme Court has ruled repeatedly that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and actual prejudice. See United States v. Frady, 456 U.S. 152, 167-68 (1982); Bousley v. United States, 523 U.S. 614, 621-22 (1998); Massaro v. United States, 538 U.S. 500, 504 (2003). Stated slightly differently, nonconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings. Stone v. Powell, 428 U.S. 465, 478 n.10

(1976). The Fourth Circuit held, in United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999), that "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack."

To raise constitutionally-based grounds for relief in a § 2255 motion, a defendant has a "significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). He must meet the two-part "cause and actual prejudice" test. Id. at 167-68.

> To obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) "cause" excusing his double procedural default, and (2) "actual prejudice" resulting from the errors of which he complains.

Id. at 168. If the defendant fails to meet the actual prejudice prong of the test, it is not necessary to address "cause." Id. Cause for a procedural default can arise only from "something external to the defense," such as the novelty of the claim or ineffective assistance of counsel. Mikalajunas, 186 F.3d at 493.

The constitutional claim which Defendant is attempting to raise now, but was not raised at his trial or on direct appeal, is that he was denied due process and a fair trial because:

> Participation of juror Adrian Mosby;
> References to the ethnicity of Defendant as Mexican before a jury composed of whites only (no Latinos);
> References in testimony to execution of search warrants, traffic stops and Defendant's use of aliases;
> Inconsistent testimony among witnesses;

6

>Absence of wiretap and video surveillance evidence;
>Alleged conflict of interest created by one attorney representing three witnesses against Defendant;
>Prior prosecution and detention of Defendant on immigration charge; and
>Use of section 851 information to enhance Defendant's sentence.

In the Attachment to his Motion (ECF No. 206, at 14), Defendant asserts that his right to due process and a fair trial was violated by the participation of jury panel member Adrian Mosby, a photo journalist with WOWK, Channel 13 News in Charleston. (Tr. Trial, ECF No. 189, at 11.) Mr. Mosby stated at a bench conference out of the presence of the jury that he was aware of the facts of the case (and Ms. Canterbury's prior trial) as reported in the media but that he had not formed an opinion. (Id., at 13.) Defense counsel challenged Mr. Mosby for cause, which was granted, and Mr. Mosby was excused. (Id., at 52.) Clearly no constitutional violation occurred.

Occasionally during the trial, witnesses referred to individuals as being "Mexican," or as speaking Spanish. Defendant contends that his trial was unfair because this showed "a pattern to integrate ethnicity to punctuate a certain type of character." (ECF No. 206, at 15.) He notes that at the conclusion of voir dire, defense counsel objected to the composition of the jury panel, noting that it was comprised of only whites, while Defendant is Latino.[3] (Id.; Tr. Trial, ECF No. 189, at 65.) The objection was overruled, as no evidence was presented to suggest that any bias or prejudice occurred in selection of the jury panel or the jury itself. (Id.) Upon review of the trial transcript, the undersigned is satisfied that the references to "Mexican" or "Spanish" were merely descriptive of individuals, without any apparent implication that such a person was more likely than not to be a drug dealer

---

[3] The 2010 census indicates that persons of Hispanic or Latino origin in West Virginia comprise 1.3% of the population, and white persons are 94.1%. http://quickfacts.census.gov/qfd/states/54000.html (January 4, 2013).

or bad person, and that no constitutional violation occurred through the presentation of this testimony.

Next, Defendant argues that he was prejudiced by testimony concerning a search warrant executed at Defendant's residence in Chicago ($60,000 cash was seized), a traffic stop of Defendant's vehicle in St. Louis (hydraulically operated secret compartment with $3,000 cash discovered), the bundling of cash in $1,000 increments, and his use of aliases. (ECF No. 206, at 15-16.) It appears that Defendant contends that the testimony was more prejudicial than probative, and that he used an alias because of his illegal immigration status. (Id., at 16.) The evidence was relevant and properly admitted.

Defendant contends that he was denied a fair trial because the testimony of some witnesses was in conflict; he asserts that this created "a distorted and/or fraudulent representation of facts to a conscious Jury." (Id., at 18.) He states that he saw Ms. Canterbury and two other witnesses (father and son, Roy Blankenship Sr. and Jr.) being held in adjoining holding cells in the Marshals Service's lockup which he claims "created a forum for 'meeting of the minds' on drafting a more accurate deceptive theory of prosecution." (Id.) These allegations, plus those concerning the absence of wiretap and video surveillance evidence, all go to the sufficiency of the evidence to sustain the convictions, which the Fourth Circuit has decided.

Defendant argues that he was denied a fair trial because three witnesses (Roy Blankenship, Sr., Roy Blankenship, Jr. and Hulen Layne) were represented by one attorney, Steve Owens. (Id. at 19.) He claims that these witnesses received benefits from the government for their testimony, "to try and tailor a theory of prosecution for Mr. Gamboa, a 'Indigent Pawn.'" (Id.) Defendant does not have standing to challenge whether a conflict

8

of interest existed among witnesses against him, so long as Mr. Owens had no prior involvement in representing Mr. Gamboa.

Next, Defendant complains that the government had "unclean hands" because he was in custody on another charge (illegal re-entry) for fourteen months when he was charged in the instant case. (Id., at 20.) He contends that his prosecution and incarceration on cocaine and money laundering charges is a waste of money and a miscarriage of justice. (Id.) Defendant was arrested on June 29, 2007, based on a criminal complaint which charged him with illegal re-entry after deportation without first having obtaining consent from the Secretary of Homeland Security or the Attorney General. United States v. Gamboa, No. 2:07-cr-136 (S.D. W. Va.). He pled guilty on October 18, 2007. On February 21, 2008, Defendant was sentenced to serve a 46 month term of imprisonment, to be followed by a three year term of supervised release. On July 15, 2008, Defendant and Lorene Canterbury were indicted on the cocaine conspiracy; on December 9, 2008, a superseding indictment was returned which added the money laundering charge. Thus Defendant was in custody for about a year before the cocaine conspiracy charge was filed against him. He does not explain how the government's charging process violated his constitutional rights, other than to complain that he "was used as a pawn to discharge a miscarriage of justice." (ECF No. 206, at 20.) The undersigned discerns no defect in the procedure followed by the United States.

Defendant challenges his sentence of life imprisonment imposed pursuant to 21 U.S.C. § 841(b)(1)(A) ("If any person commits a violation of this subparagraph . . . of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . . .").

The Fourth Circuit ruled that there was sufficient evidence of his three prior felony drug convictions. Defendant, however, asserts that the convictions are too old and that the United States improperly attempted to amend its Information (ECF No. 134) during the sentencing hearing. (ECF No. 206, at 21.) The purported amendment concerns Defendant's conviction in the Eighteenth Judicial Circuit, Du Page County, Wheaton, Illinois. The Information recites that Defendant was <u>convicted</u> on February 8, 1980, of possession with intent to deliver cocaine; the certified Criminal Sentence Form admitted into evidence reflects that on April 7, 1980, Defendant was <u>sentenced</u> to serve twenty years in the Department of Corrections for possession with intent to deliver cocaine (ECF No. 178, at 3). In other words, there was no "amendment," despite references to two different dates. Moreover, if there was an amendment, 21 U.S.C. § 851(a)(1) provides that "[c]lerical mistakes in the information may be amended at any time prior to the pronouncement of sentence." The Criminal Sentence Form was admitted prior to imposition of sentence.

The final issue with respect to the sentence is that Defendant argues that his prior felony drug convictions which pre-date 1984 should not have been considered for the purpose of § 841(b)(1)(A). (ECF No. 206, at 21.) In support of this argument, he cites to <u>Little v. United States</u>, No. 01-40077-RWZ, 2002 U.S. Dist. LEXIS 11943 (D. Mass. July 1, 2002). The <u>Little</u> case is inapposite. In <u>Little</u>, the petitioner was sentenced for a violation of 21 U.S.C. § 843(b), which carries an enhanced penalty if the person has previously been convicted of a <u>federal</u> felony drug offense. 21 U.S.C. § 843(d)(1) ("except that if any person commits such a violation after one or more prior convictions of him for violation of this section, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of the United States relating to narcotic drugs . . ."). Prior state

convictions are not counted under § 843(d). At least since 1988, the provision in § 841(b)(1)(A) relating to prior convictions has not been limited to federal offenses. Anti-Drug Abuse Act, Pub. L. No. 100-690, § 6452, 102 Stat. 4371 (1988) ("after two or more prior convictions for a felony drug offense have become final . . ."). "Felony drug offense" is defined in 21 U.S.C. § 802(44) as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs . . .." Defendant's sentence of life imprisonment without release was properly imposed based on his multiple convictions for drug felonies in both state and federal courts.

The undersigned proposes that the presiding District Judge **FIND** that Defendant has failed to show that he was prejudiced by any of the errors which he assigns which were not raised in this court or on direct appeal.

Ineffective Assistance of Counsel

Defendant raises the following grounds for alleged ineffective assistance of counsel: failure to obtain a plea offer to the first indictment; failure to request a suppression hearing; and failure to have the assistance of an interpreter during "P.S.I. notification." (ECF No. 206, at 16, 21.) In his Reply, Defendant asserts that his attorneys failed to insure that he was arraigned on the superseding indictment (ECF No. 212, at 1-2.) The last claim is clearly untrue, as demonstrated by the minute book entries for December 17, 2008 at ECF Nos. 46, 49, 50; the undersigned will not address it further.

The Supreme Court addressed the right to effective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984), in which the Court adopted a two-pronged test. The first prong is competence; movant must show that the representation fell below

an objective standard of reasonableness. Id., at 687-91. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel. Id., at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Id., at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694. The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice. Id., at 697.

Defendant contends that his attorneys failed him by not offering him a plea. (ECF No. 206, at 16.) He supports this contention by attaching a letter dated May 25, 2009, in which he requests John H. Tinney, Jr., to get him a plea for 36 months to run concurrently with the 46 month sentence he was then serving for illegal re-entry. (ECF No. 206, at 24-25, Ex. A.) On May 25, 2009, the superseding indictment had been returned and trial was set for June 2, 2009, on which date the United States filed the § 851 Information to enhance Defendant's sentence. (ECF Nos. 84, 134.) In light of the overwhelming evidence of Defendant's guilt and his lengthy and serious prior criminal record, it is not reasonable to

suggest that the United States would have considered his offer to plead with no additional imprisonment to be served.

Next, Defendant argues that he was denied effective assistance of counsel because they (Mr. Tinney and Dennis Curry) did not request a suppression hearing. (ECF No. 206, at 16.) He supports this argument with a letter dated February 26, 2009, to Mr. Tinney, in which he wrote the following:

> I need you to make a motion to suppress Ms. Canterbury's statement based on her credibility, whether or not she was hospitalized at HCA River Park Hospital in Huntington, WV, after attempting to [commit suicide by (?)] ingesting prescription narcotics. Please that is not her first time, she has a long record of it. Just look and for that reason I thin[k] anything she had to say against me should be throwed out because she is mentally unstable. And Mr. Hobbs [Ms. Canterbury's attorney] is going to file a motion to squash Ms. Canterbury's statement.

(Id., at 28.) Co-defendant Lorene Canterbury is serving a sentence of 162 months upon her guilty plea to both charges in the superseding indictment. During her guilty plea hearing on May 14, 2009, the presiding District Judge inquired as to her competency, and found her to be "competent and capable of entering an informed plea." (ECF No. 110, at 1.) If Ms. Canterbury's credibility was subject to challenge, that was a matter for cross-examination, not a motion to suppress.

Defendant asserts that Mr. Herbert Hively rendered ineffective assistance of counsel in that he did not provide Defendant with an interpreter "during P.S.I. notification." (ECF No. 206, at 21.) While it is unclear what Defendant means by that phrase, Defendant stated under oath at his sentencing hearing, with the assistance of an interpreter, that he had an opportunity to read the presentence report and to discuss it with his lawyer. (Tr. Disp. Hrng, ECF No. 191, at 3.) He further stated that he understood the contents of the report.

13

(Id.) The undersigned notes that the presentence report states that Defendant came to the United States in 1966 at the age of 17, and earned a General Equivalency Degree while incarcerated. It is apparent that he can read and write English.

Based on the record, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not pointed to any act or omission of counsel which was not well within the wide range of professionally competent assistance, that Defendant has failed to show that he was prejudiced in any way by his counsel's representation, and that Defendant was not denied effective assistance of counsel.

It is respectfully **RECOMMENDED** that Defendant's § 2255 Motion be denied.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendations to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140

(1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on the United States Attorney, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendations, to mail a copy of the same to Defendant, and to transmit it to counsel of record.

January 4, 2013
      Date

Mary E. Stanley
United States Magistrate Judge